UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RODNEY ALAN TITUS and<br>JAMES WAYNE TIPTON,<br><br>Defendants. | 4:16-CR-40067-KES<br><br><br>ORDER ADOPTING<br>REPORT AND RECOMMNEDATION AS<br>MODIFIED AND DENYING MOTIONS<br>TO SUPPRESS |

Defendants, Rodney Alan Titus and James Wayne Tipton, are charged with being felons in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Docket 2. Tipton and Titus move to suppress all evidence stemming from a search warrant issued on April 14, 2016, and request a *Franks* hearing. The court referred defendants' motions to Magistrate Judge Veronica Duffy pursuant to 25 U.S.C. § 636(b)(1)(B). Docket 74; Docket 76. After holding an evidentiary hearing, Magistrate Judge Duffy recommended that this court deny defendants' motions to suppress. Tipton now objects. After a de novo review of the Report and Recommendation and a review of the record, the court adopts the Report and Recommendation as modified below and denies Tipton's motion to suppress.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and

specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1)(A); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## BACKGROUND

After a de novo review of the evidence, the court finds the pertinent facts are as follows:

The Mitchell Police Department (MPD) began investigating an indecent exposure incident on April 14, 2016, after a young male exposed his genitals in the Dakota Wesleyan University (DWU) library. The victim described the flasher as a skinny, white male approximately 20-30 years old with buzzed brown hair. Exhibit A at 2; Docket 87 at 150:16-18. The victim described the flasher's clothing as dark flannel pants and a darker colored t-shirt. Docket 87 at 150:17-18. During the investigation, the MPD also learned that a suspicious male wearing a black bandana was seen on campus earlier that day, but no one could confirm whether the suspicious male was the flasher. *Id.* at 9:5-20; 40:2-15.

Although the search for the flasher began on the DWU campus, it expanded to areas outside of the University. *Id.* at 8:21-9:1. Detectives Peter Arnold, Brian Larson, and Dan Fechner began checking local motels for a young male fitting the flasher's description. *Id.* at 10:3-12. The search for the flasher eventually led the detectives to the Siesta Motel. *Id.* at 10:13-15. Detective Arnold spoke with the

manager of the motel and learned that the manager had not seen anyone matching the flasher's description, but two suspicious males recently had checked into the motel. *Id.* at 10:20-11:5. The room was rented to James Tipton. *Id.* at 11:6-8. Detective Arnold knew the name James Tipton because a James Tipton was the victim in an ongoing fraud case Detective Arnold was investigating. *Id.* at 12:2-14. Detective Arnold wanted to speak with Tipton about the fraud case, but the motel manager said Tipton and the other man, later identified as Titus, were not currently at the motel. Exhibit 1 at 3. The manager said Tipton and Titus had been driving two cars, but only one car was in front of their motel room. Docket 87 at 12:20-13:22. Because Tipton and Titus were not at the motel, the detectives continued to search for the flasher. *Id.* at 12:22-25.

Later, the detectives returned to the Siesta Motel, and two cars were in front of Tipton's room. *See id.* at 13:1-4. The detectives ran the plates for the cars, and both cars came back registered to Titus. *Id.* at 13:4-6. The detectives decided to approach the motel room. *Id.* at 13:7-9. Detective Arnold knocked on the door while Detective Larson looked into the room. *Id.* at 13:7-17. Although the curtains to the room were shut, Detective Larson could see through a gap in the shades. *Id.* at 79:23-24. Detective Larson saw two people in the room. *Id.* at 80:1-2. Tipton was standing closer to the door, but he did not answer immediately. *Id.* at 80:1-8; 81:8-13. There was a short delay, and Titus took something into the bathroom. *Id.* As this happened, Detective Larson told the other detectives, "He's hiding something." *Id.* at 80:23-24. When Tipton opened the door, Titus was still in the bathroom. *See id.* at 81:20-24.

3

Although the testimony is unclear about what happened immediately after Tipton opened the door, Detective Arnold entered the room "either to call Mr. Titus out of the bathroom or to conduct a safety sweep or both." Docket 92 at 7-8.[1] When Detective Arnold entered the room, he noted that two black bandanas and a large machete type knife were on the bed. Exhibit 1 at 4; Docket 87 at 22:16-17. At some point, Tipton and Titus were asked to step outside the motel room, and Detective Arnold discussed both the fraud case and the DWU investigation with them. Docket 87 at 14:23-15:2; 19:12-20; Docket 92 at 7-8.

As Detective Arnold talked with Tipton, he noted that Tipton was "highly animated, appeared to be nervous, and was very dramatic . . . ." *Id.* at 18:10-18. Detective Arnold—based on his training and experience—believed Tipton was "under the influence of some type of narcotic stimulant." *Id.* at 18:15-18. As a result of this belief, Detective Arnold requested that Trooper Lord with the South Dakota Highway Patrol conduct a K-9 open air sniff around the cars outside the motel room. Exhibit 1 at 5; Docket 87 at 27:6-10. When Trooper Lord arrived, the K-9 performed the open air sniff and alerted on one of the cars registered to Titus. Docket 87 at 27:5-14. Tipton and Titus refused to consent to a search of the cars or the motel room. Exhibit 1 at 5-6. Both men were then transported to the Mitchell Police Station. *Id.* at 6. The Interstate Identification Index (Triple I) showed Tipton's prior drug related arrests included two prior arrests for drug

---

[1] Tipton objects to Magistrate Judge Duffy's finding that "Det. Arnold entered the motel room, either to call Mr. Titus out of the bathroom or to conduct a safety sweep or both." Docket 98 at 3. Although it is unclear exactly why Detective Arnold entered the motel room—either to call Mr. Titus out of the bathroom or to conduct a safety sweep—the record supports either valid justification. There is no evidence that Detective Arnold's initial entry into the motel room violated either Tipton's or Titus's constitutional rights.

paraphernalia, two arrests for drug possession, and one arrest for distribution of methamphetamine. Exhibit 4 at 2-3. Titus's Triple I showed his only prior drug related arrest was for keeping a place for the sale or use of drugs. Exhibit 3 at 5.

Detective Arnold, based on his interactions with Tipton and Titus, submitted an affidavit requesting a search warrant for the motel room, the two cars registered to Titus, and the persons of Tipton and Titus. Exhibit 1 at 2. Detective Arnold also requested that the court order Tipton and Titus to provide a urine sample. *Id.* In his affidavit in support of his request for a search warrant, Detective Arnold included the following factual information: (1) Detective Arnold had participated in prior narcotics investigations; (2) the manager at the Siesta Motel noted that Tipton and Titus had been acting strangely; (3) Tipton and Titus appeared to be hiding something before answering the door for the police; (4) a large machete knife was lying on the bed of the hotel room; (5) a large backpack was wedged behind the bathroom toilet; (6) Tipton appeared highly animated and fidgety and that based on Detective Arnold's training and experience Detective Arnold believed Tipton was under the influence of narcotics; and (7) a K-9 indicated the presence of narcotics in one of the cars registered to Titus.[2] Exhibit 1 at 3-6.

A state court magistrate judge ordered the issuance of the search warrant, and when the MPD executed the warrant on the motel room, they discovered a .45-caliber handgun. Docket 87 at 22:12-15. The MPD also found a marijuana pipe in

---

[2] Tipton raises three factual objections to the report and recommendation related to Detective Arnold's statements connecting Tipton with the DWU flasher. Docket 98 at 1-5. Because the court finds that Detective Arnold's Affidavit in Support of Request for Search Warrant supports a finding of probable cause as to Tipton's alleged drug activity, the court declines to rule on those factual objections.

one of the cars, and the urinalysis tests for Tipton and Titus were positive for methamphetamine. *Id.* at 117:17-18; 141:1-5.

## DISCUSSION

There is a "presumption of validity with respect to [an] affidavit supporting [a] search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). But where the defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause," then the defendant is entitled to an evidentiary hearing on the validity of the warrant. *Id.* at 155-56. If the defendant "proves by a preponderance of the evidence that (1) a law enforcement officer knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit, and (2) without the false statement, the affidavit would not have established probable cause," the search warrant must be voided and the fruits of the search must be suppressed. *United States v. Neal*, 528 F.3d 1069, 1072 (8th Cir. 2008) (citing *Franks*, 438 U.S. at 155-56). "This rationale also applies to information that the affiant deliberately or with reckless disregard for the truth omits from the affidavit such that the affidavit is misleading and insufficient to establish probable cause had the omitted information been included." *Id.*

Here, Magistrate Judge Duffy found that Tipton and Titus were entitled to a *Franks* hearing. After conducting the *Franks* hearing, she recommended that the suppression motions should be denied. Tipton now raises multiple objections to the Report and Recommendation.

6

## I. Legal Objections 1-4 Regarding the DWU Investigation

Tipton's first four legal objections are related to Detective Arnold's statements that link Tipton with the DWU investigation. Because the court finds that Detective Arnold's Affidavit in Support of Request for Search Warrant provides a sufficient basis for a finding of probable cause as it relates to potential drug activity, the court declines to rule on these objections.

## II. Legal Objection 5: Detective Arnold's Misstatement about Titus's Criminal History

Magistrate Judge Duffy found that Detective Arnold's statement about Titus's criminal history was made with reckless disregard for the truth. Docket 92 at 31. Tipton does not object to this conclusion. Docket 98 at 9. The court also notes that Magistrate Judge Duffy found that Detective Arnold's statements about Tipton's criminal history were accurate. Docket 92 at 31. "Mr. Tipton did have multiple arrests, one for distribution and two for paraphernalia . . . ." *Id.* Tipton does not object to that conclusion either.

## III. Legal Objection 6: Detective Arnold Omitted Tipton's and Titus's Explanations for their Activity Before the Search

Tipton argues that "the only evidence of drug activity was linked to a single vehicle, not the motel room. The mere minutes Tipton and Titus had been there further erode any link between the motel room and any suspected drug activity." Docket 98 at 10. Tipton's argument, however, does not account for the fact Tipton and Titus were "working in concert" to hide something in the motel bathroom. Docket 92 at 25. The argument also overlooks the fact that a weapon—a large machete type knife—was on the bed of the motel room. Exhibit 1 at 4. When these facts are added to Detective Arnold's observations of Tipton's behavior, the alert by

7

the K-9 unit, and Tipton's prior criminal record, the relevance of the length of time Tipton and Titus spent in the hotel room is significantly diminished because the two men's behavior supports a finding of probable cause that illegal drugs were inside the motel room.

### IV. Legal Objection 7: Detective Arnold Did Not Have Probable Cause for a Search Warrant

Even when the court excludes Detective Arnold's statements in his affidavit regarding Titus's criminal history and adds additional information about the short period of time Tipton and Titus were in the motel room, the affidavit still supports a finding of probable cause. Tipton and Titus acted in concert to hide something before answering the motel door. A large knife was on the bed of the motel room. A backpack was wedged behind the toilet of the hotel room. Tipton appeared to be under the influence of a narcotic. A K-9 unit alerted to a car registered in Titus's name, and Tipton had prior convictions related to drug distribution and paraphernalia. Based on these facts, a magistrate judge could determine that there was probable cause for a search for drugs or drug related items in the motel room, in the cars, or on the defendants.

### V. *Leon* Good Faith Exception

Tipton's final objection to the Report and Recommendation is that the *Leon* good faith exception does not apply in this case because Detective Arnold "misled the state magistrate by including false information that the affiant knowingly or recklessly included." Docket 98. Because the court finds that Detective Arnold's misstatement about Titus's criminal history had "no effect on probable cause to issue the warrant," the court adopts the Report and Recommendation's conclusion that the *Leon* good faith exception applies.

## CONCLUSION

The affidavit Detective Arnold provided in support of his request for a search warrant included facts sufficient for a finding of probable cause as to Tipton's and Titus's potential drug activity. Thus, it is

ORDERED that the Report and Recommendation (Docket 92) denying Tipton's motion to suppress evidence and Titus's motion to suppress evidence is adopted as modified by this opinion.

DATED this 21st day of July, 2017.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE